MAY 19 2025 AM 8:16
FILED - USDC - NDTX - LU

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| WILLIAM E. WASHINGTON, | § | |
| Institutional ID No. 05293051, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| | § | No. 5:24-CV-228-BV |
| | § | |
| MANAGEMENT&TRAINING | § | |
| CORPORATION, et al., | § | |
| | § | |
| Defendants. | | |

QUESTIONNAIRE AND DECLARATION

Plaintiff <u>must</u> provide answers on this form. If Plaintiff needs additional space to fully answer the Court's questions, he may attach additional pages and number each response with the corresponding number on the Court's questionnaire. The purpose of this questionnaire is to develop the factual bases of Plaintiffs claims—i.e., the who, what, where, when, why, and how. Therefore, Plaintiff may **not** quote, cite, or otherwise reference legal authority.

**On this date Plaintiff, under penalty of perjury, provides the following answers and information as required by the Court.**

I.      **Questionnaire**

1.   **You allege that between March 27 and June 13, 2023, Brent Reubensam sexually assaulted you.**

a. **On how many occasions did this occur?** On at least **two occasions** I distinctly remember him forcing oral sex on me and kissing the end of my phallus **once.** He groped my penis on a number of occasions, but no more than **six** or **seven times**. He attempting to masturbate me **at least twice**, prior to the oral sex. I think it was too get me erect. The proposition to coerce me into penetrating him anally when he dropped his trousers and showed me his buttocks **once**, and after pulling his pants up and said "squeeze my ass" **once**.

**b. Specify <u>each</u> date of occurrence.**

These represent to approximate days on or about which time the occurrences took place at Reubensam's office.

March 20th, 2023        March 23rd,2023   March 27th, 2023

April 18th, 2023         April 24th, 2023

May 26th, 2023

On or about the week of:

June 5th (on the 6th, I believe) and on or about June 13th or 14th, he made a final attempt to perform a sexual act on me and asked me to "let me see it one last time before I go"?

**c. For <u>each</u> date, generally describe the nature of the alleged sexual assault.**

The end of February or beginning of March we begin to have conversations about the possibility of me having to end a five-year relationship with my partner at the facility. He told me that he was going to have to do some kind of training he had coming up in the coming days or weeks, but that he would be back and call me in when he returned.

The first time any contact happened was on or about the week of **March 20th, 2023**…it was a hug.

The first time the groping, masturbation, and oral sex happened…I believed was on or about between **March 23rd-27th, 2023** (when the officer told me that he came to my dorm looking for me).

The general nature of this assault consisted of him talking to me about my emotions I had regarding a previous relationship amicably ended between my partner and I. I was very emotional during this conversation and at some point started crying. He was sitting in front of me and rolled his chair kind of next to mine. He handed me some tissues. I believe I rubbed my eyes and then my nose. He rubbed my shoulder and back.

At some point he place his hand on my knee and thigh. I put my hand on his wrist and asked him to chill. He didn't remove his hand and started fondling around for my penis. Finding it, he moved his hand on me (on it), like he was trying to massage it; like he was trying to masturbate me. That's what it seemed

like to me. I became somewhat erect and he moved my pants to the side where the hole was to pull my penis out and put his mouth on me and proceeded to perform oral sex on me. This left me hurting and sore.

**On or about March 24ᵗʰ, 2023.** (this, I believe was the time (the next day) when he stood up and gave me a hug and had an erection against my leg when he hugged me).

The nature of this assault consisted of him calling me to his office, he asked me what amounted to nothing questions. He said that he was trying to "check-in" on me; he asked me what I thought about the event which had taken place the day before? We talked about his dogs and a number of different things, music, current events in the news, etc.
Somewhat a little more relaxed, after we had finished talking, I stood-up and he stood-up also and put his arms around me hugging me. I stood there with my arms by my side as he hugged me. I stood back abruptly because I could feel on my thigh and noticed he had what appeared to be an erection. He smiled at me and winked saying he would see me tomorrow. I left his office and this was the first time I believe I went to Ms. Lyon's office in an attempt to report what happened.

During the time between this incident and the next we saw one another on a number of occasions, but nothing sexual happened. Sometimes, it was just in passing and he gave me brief updates on where things stood with Ms. Lyon, or just wanting to talk.

**On or about April 18ᵗʰ, 2023** (after trying to duck and dodge him), we    saw one another on the sidewalk and he told me to follow him to his office. This is when he was sitting in his chair and had an erection…the second time he had groped and forced oral sex on me…the same day he stood-up and wanted me to penetrate him anally and said "squeeze my ass"?

The nature of this sexual assault consisted of us passing one another on the sidewalk, and him telling me to come to his office for a quick minute. The conversation started with small talk and him showing me some videos on You Tube. He asked about my sexual preferences and I got anxious and was reminded of my recently ended relationship.

In general terms he rubbed my thighs, put his hand between his legs on his crouch area. I tried to leave by saying that I wanted to go lie down. He made me stay.

As I sat back down after some brief talk about me being irrational, he said he had a "distraction" for me. He reached for my groin area and groped me, his pants were unzipped and I saw that he had an erection. He slid out of his chair

between my legs and put his hands inside of my shorts and pulled out my penis from the side of my boxers.

I was tensed, scared, afraid of getting caught, and embarrassed I begin to get an erection and he put his mouth on my penis proceeding to perform oral on me. He was in a hurried and somewhat aggressive state, and that left me hurting really bad when he stopped.
Someone knocked at the door as I was fixing my shorts, it startled both of us and I recall both of us sitting down in the chair fairly quickly. I believed it to be another resident. He asked me if what had happened was between us, and I said "yes". I went to the dorm wiping myself with the shorts and then went to the shower for a long time, I remember throwing up, crying and being upset.

I believe on or about the **April 24th, 2023**...I think it was after the weekend had passed, that he called me to his office and as I entered he was standing at the door. He told me to close the door and when I turned around he was right in front of me and put his arms around me and I tensed up as he reached down grapping my penis outside of my pants.
He wanted to talk about how my weekend was and said that he thought about me. I think he was more worried about if I had told anyone about what he had done.

On or about **May 26th, 2023**, he called me to his office. The general nature of this assault mainly consisted of him groping my groin area as I sat in the chair. I believe he was going to have a staffing with my case manager Ms. Lyon, and asked me how I was doing with group and emotions. I told him I was upset and had lost confidence in Ms. Lyon. He reached down to my leg in my groin area and squeezed me. He told me that I could have confidence in him. He asked why I was wearing jeans on such a warm day? I shrugged my shoulders afraid to tell him the real reason, and said "just felt like it". He said he had to get going and when I stood-up he did also and rubbed me on the back as I walked out the door. This was the last actual contact of a sexual nature.

2.  **You contend that Reubensam's conduct violated the Equal Protection Clause.**

   a.  **Are you alleging that Reubensam discriminated against you based on your membership in a definable class? Answer "yes" or "no." If your answer is "yes," explain the class to which you belong.**

      The definable class I was speaking of was pursuant to Senate Bill 1179, where those who are "civilly committed" are given a harsher criminal penalty than an ordinary individual who would commit the same crime. A singling out if you will. The Bill specifically states in a number of places "unless the individual is civilly committed". As an individual involuntarily committed in a sex-offender treatment program. I also alleged that the statutory scheme he used to get me into his office under the guise of "treatment" discriminates against a definable class of helpless persons, which resulted in an absolute deprivation of a government benefit to treat and release.

b. **If you answered "yes" to question 2.a. above, specifically describe all facts supporting your allegation that Reubensam acted because of your membership in a class.**

Okay, so the facts of these allegations are, *he knew that I was in a vulnerable situation* knowing that the plaintiff was involved in a same-sex romantic relationship. *He knew that the plaintiff was struggling with his sexuality and emotions due to that relationship coming to an end. He was aware that TCCO was retaliating against me and mentioned as much. He also knew that the plaintiff had no help in the way of advocacy.* He showed nefarious discriminatory practices and purpose by what seemingly amounted to the singling out of the plaintiff verses the hetero sexual residents, because he knew that the plaintiff was a part of the LGBTQ community at the facility. *When I made mention of the idea that "maybe being gay is not for me", he raised his voice and said I was being irrational and I needed to sit down.*

What he did was intentional, beyond negligent as he *continuously sought the plaintiff out;* and there was no rational basis for the difference in treatment other than his own selfish motivations versus the way he treated others which he saw. To say otherwise; would mean that there could possibly be more individuals who suffer the same victimization as the plaintiff.

After the plaintiff's original filing, it was revealed that there might possibly be at least one other victim of the defendants, who was also a part of the LGBTQ community. This also shows that Reubensam singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on an identifiable group… that group being *young-looking gay black men* at the facility. I was not protected from him. They know that homosexuals are a definable minority and treated us as such; that being a suspect or quasi-suspect class, there can be little doubt that homosexuals are an identifiable minority subjected to discrimination in our society. The defendants allowed the harassment and assaults a result of defendant's negligent supervision and reckless indifference.

3. **You assert that Reubensam was deliberately indifferent to your serious medical needs.**

   a. **Specifically identify your medical need(s).**

   Those medical needs specifically, were:

   Me needing someone who was going to support me and tell it was going to be okay. I needed someone to tell me that I wasn't going crazy and that I was doing the right thing in support of what I believed to be righteous and equal for everyone.

   I needed "support" services from the Mental Health department which he was a part of, because I was diagnosed with GAD, PTSD and OCD which I continue to take

medication for; and I was feeling overwhelmed and attacked and I couldn't handle all of it by myself.

Reubensam was aware of my struggles with separation anxiety and abandonment. The need for his counseling regarding mental anguish, emotional and grief counseling the likes of which he only attributed to exponentially was what I was hoping for. Counseling for dealing with the struggles of ending a romantic relationship. As opposed to his intentions and actions to persuade or coerce me that I should "remain" gay. I was mandated to go to him for help, and even after voicing my displeasure with having to see him the sanctions began.

b. **Specifically describe the <u>facts</u> supporting your allegation that Reubensam was deliberately indifferent.**

The facts supporting my allegations were documents, some of which he fabricated, that he failed to take action to ensure Plaintiff received the necessary mental health treatment he needed, the defendants ignored my complaints of not wanting to see Reubensam, intentionally treated me incorrectly, and engaged in similar conduct that would clearly evince a wanton disregard for any serious medical needs to my constitutional rights.

The defendant learned of facts about the plaintiff he could then exploit, such plaintiff's treatment schedule, who he associated with, or when to call me to his office. He <u>knew I was torn-up and heartbroken</u> about everything that was going on at that time surrounding my relationship and treatment progression. He was sent an e-mail by Lyon to meet with me, and given a summary of what was going on at that time in my life. He was supposed to help me.

Of the twenty or so times that he came and got or called me to his office, at least twelve or thirteen of them involved some form of sexual assault, contact, or conversation; particularly times when he had me isolated in his office. There was rarely a time when something sexual did not come up.

Even after writing request and a grievance to see someone else I was told "all of y'all are f.o.s.". I was exposed to a substantial risk of serious harm, and to that point the defendants were deliberately indifferent to the risk. Having oral sex forced upon me and constantly being groped is in complete opposition to the help I needed at the time.

When I spoke with Ms. Lyon about the nightmares and hardships that cause some to want to commit suicide, she told me "no one (in TCCO) is going to care, they won't even talk about it after it happens. You need to see Reubensam or face possible tier demotion".

{Space intentionally left blank}

9

c. **Specifically describe how you were harmed by Reubensam's alleged deliberate indifference.**

The defendant was exposed to information concerning the risk to a client/patient (namely the plaintiff) and exploited that.

I was harmed by Reubensam's deliberate indifference physically from his repeated groping of my genitals and forced oral sex. I was harmed emotionally; as I felt helpless and begin to feel as if I was shattering. I was harmed psychologically; as I begin to have nightmares of the assaults needing medication being Prozosin to deal with them. My dosage for anxiety was increased twice being Paxil.

I suffered sleep deprivation. I begin to have nightmares, I started fighting in my sleep, which caused me on a number of occasions to launch myself or fall off the top bunk-bed which I sleep on. As a result, I was rushed to the hospital. I had suffered a back and neck injury and had a series of CT scans, MRI's, and X-RAY's done.

My trust in the administration and those in positions of authority was already fragile, but after these encounters, it got progressively worse. I was withdrawn and begin to isolate. I begin to have negative attitudes and affect, cognitive distortions of hopelessness, depression, anxiety, panic, and ruminations. The relationships I did have begun to suffer. I questioned everything and wanted to quit and just give-up. I really struggled.
He failed to provide timely and appropriate healthcare services.

4. **You state that Reubensam "is under criminal investigation by the Lamb County Sheriff's Office." Do you know the status or outcome of that investigation? Answer "yes" or "no." If your answer is "yes," specifically describe all information of which you are aware.**

No. I currently am not aware of the status of that investigation; I only knew that there was one, and that criminal charges were a strong possibility or pending. I have not spoken with the investigator lately. I was interviewed and he told me that he believed me.

5. **You assert that Management & Training Corporation (MTC) and James Winckler failed to adequately investigate your reports of sexual assault by Reubensam.**

a. List *each* date you reported Reubensam's conduct.

The first time I believe I attempted to report the conduct was on or about April 21st, 2023. The second time I attempted to have the conversation with Ms. Lyon was when she called me a couple of days later to her office, on or about April 24th or 25th, of 2023. After feeling she was not going to help me, or didn't seem to care, I sent a letter to the MTC headquarters in Centerville, Utah.

Again, I sent a communication to Winckler by Sgt. Candy Weaver, and she took it personally to his office and put it on his desk. This was on or about May 11th, 2023. When I saw Winckler on the sidewalk, I asked him if he had got my communication and grievance, Sgt. Weaver said she put it on your desk? To which he responded… "all of y'all are full of s---." I walked away.

Later… some time later, I spoke to my psychiatrist Dr. S. Iannucci about what had taken place. She advised me to reach out to my attorney (Mr. Martin Siegel who was representing me at that time regarding the Right to Marry in the 5th Circuit), and told me that I could have him contact her. I called and wrote him a letter. He wrote me back and called me as well, and voiced his concern; and then told me my options and said he would help me in any way he could, but he was worried about what it would mean for me being here in this program in relation to going home or retaliation. A very valid concern.

These conversations took place over the course of the next eight to nine months, particularly with Dr. Iannucci. She again, encouraged me to come forward and gave me her support. First, I told my parents and together, she advised those she needed to on her end and told me who to talk to in charge on my end. I again, wrote another letter to MTC corporate and regional offices, this time in the form of a demand letter, on the advisement of my attorney at that time. In July of 2024, I made mention of this to Kara Gouglar and Chris Greenwalt of the issues surrounding Reubensam. I also told my therapist Ms. Tanya Hainey.

**b. For each date listed in question 5.a. above, state (1) to whom you made the report; (2) the method of reporting (e.g., verbal, written, etc.); (3) the specific information you included in your report; and (4) the person's response to your report.**

1. I first attempted to tell Ms. Lyon (TCCO case manager) verbal report, Her response was "send me a communication with your request; don't just come by the office". The second time was no one is going to care. We didn't even get far enough in the conversation for me to give her any details before she shut it down.

2. Next, I spoke with Sgt. C. Weaver (MTC staff) verbally and gave her the grievance and communication forms. Her response to me was; Mr. Winckler needs to know about this. This ain't the first time I've heard something like this about Reubensam, they need to do something. He's not here right now, so I'm going to put it on his desk personally Mr. Washington, he will see it and should come talk to you about it okay? I said okay thank you and we walked away. The report contains my request not to see Reubensam anymore and asking to see anyone else.

3. Then on August 6th, I wrote the United States Department of Justice, (Criminal Civil Rights Division, Lubbock, Texas) written letter. This report was basically

a summary of what had happened to me by the defendant and requesting someone's help. No response.

4. I spoke with Defendant James Winckler, by written grievance, communication and verbally on the sidewalk. The report pertained to me asking not to have to see Reubensam anymore, and requesting to see anyone else. I told him that seeing Reubensam was not helping me. I asked him if he would come talk to me. All of y'all are full of s---.

5. Finally, In the letters I wrote to the regional office and the corporate office, I described in detail what had taken place. No one responded. I wrote at least six letters to six or seven different people including MTC counsel Amber Pickett…no response…no help. These letters were the same copies I sent the court with my original filing. No response.

c. **You contend that at least one other resident made an outcry concerning Reubensam's conduct. List the date this resident made an outcry and state any other relevant information related to this outcry.**

I believe this outcry was made sometime at the beginning of last year maybe? I'm not sure of the exact date. I only found out after my own filing about a year later. I believe the victim's name is Victor Jackson.

I don't know any details of his outcry other than apparently; Reubensam was having a sexual relationship with him, and Ms. Lisa Perdue supposedly knew of rumors that Reubensam had engaged sexually with residents before. I only found this out after people saw the detective come to speak with me which sparked conversations and questions, and that's how I came to know about Mr. Jackson's inter-actions with Reubensam.

Obviously, with such a small community, gossip circulates, but I'm not sure what's true and what's not, only that others had stories revolving around Reubensam with the same or similar issues.

6. **You allege that MTC and Winckler violated your due process rights.**

a. **Specifically explain the way(s) in which MTC and Winckler violated your due process rights.**

(1) Under the [42 USCS § § 1986. Action for neglect to prevent conspiracy], defendant learned of facts or a pattern of inappropriate sexual behavior by a subordinate pointing plainly toward the conclusion that the subordinate was sexually abusing Mr. Washington (the plaintiff); and

(2) the defendant demonstrated deliberate indifference toward the constitutional rights of Mr. Washington (the plaintiff) by failing to take action that was obviously necessary to prevent or stop the abuse; and

(3) such failure caused a constitutional injury to Mr. Washington (the plaintiff). He just blew me off and completely ignored my complaint, or simply had the luxury of not caring. He created an environment which sent the message that "we don't give a damn" which had a chilling effect. If I could not even depend on the head security to help me, who was going to? I felt it was something he wanted or tried to sweep under the rug, because it was a direct reflection on him perhaps. The defendants were contractually obligated to provide the following:

b. **Specifically describe how you were harmed by the alleged due process violations**.

I continued to suffer harm as a result of the due process violations, because as a result of their inattention, the abuse continued. At some point when they moved Reubensam's office to another dorm, that didn't stop the abuse. I still had to endure uncomfortable sexual advances and conversations. Still had to endure the threat of his coercion; and was forced to continue to have to deal with him whether I wanted to or not, because they made me. I had a right to be secure in what was supposed to be a safe-space. I had a right to reasonable safety as these incidents where not a single or isolated occasion, but several. The injury to the plaintiff was not merely caused by the consummation of acts of sexual intercourse with the defendant. Harm was also caused by the defendant's failure to treat the patient with professionally acceptable procedures.

I should have been allowed to be secure in my bodily integrity from his unwanted sexual touching; which to me was an actual violation (particularly since he was acting with a private entity under contract with the state as a state actor), not just of my due process, but a substantive due process violation as well.

Every area of my life suffered as a result of their inaction. Mentally and emotionally, I regretted having said anything at all, because I'm not sure which was worse, the abuse or the sick-to-my-stomach feeling I had knowing that they did not feel me worthy enough to even question him. I felt less-than…just unworthy. My self-esteem and self-worth was trash, Emotionally I spiraled. My treatment suffered and therefore my progress in the program. I felt a lot of fear retaliation at the time. I felt MTC had a responsibility to protect me from the physical assaults and should have had some kind of security checks or cameras, specifically if they even remotely thought it was a mere possibility the rumors could have been true that he was engaging in sexual misconduct with other residents.

In this situation, I was deprived the of the ability or opportunity to provide for my own care and safety…in spite of repeated attempts to do so. They forced this situation upon me and had a certain duty and responsibility to my well-being because I was not only dependent upon MTC, but also the state. I could not act on my own behalf in this situation or free myself from the repeated groping, oral performance, and sexual conversations. At times I wonder if he intended to humiliate me or gratify his own sexual desires

13

From a policy perspective, it's evident when one chooses not to follow the policy, being some form of due process; the lack of any kind of process is a violation on every level.

**7. You also allege that MTC and Winckler violated your right to equal protection.**

a. **Specifically explain the way(s) in which MTC and Winckler violated your right to equal protection.**

MTC and Winckler are the moving force behind the policies in place at the facility. When they fail to uphold the rules, it is only a matter of time before situations such as this complaint will happen and have indeed happened. The defendants subjected me to a number of random, malicious, and unprovoked attacks" unrelated to any therapeutic aims. No investigation was given, and no environment seemed to exist in which the plaintiff felt confident in going to medical after these incidents took place. Being reminded of others in the past who had been made fun of by staff and humiliated.

Examples of this are when Reubensam refused to let me leave his office and gave veiled threats of telling me, how would Lyon feel if he told her that I left his office; after expressing I did not want to come back to his office, a making me stay for a lengthy period of time.
Again, MTC and Winckler violated my equal protection rights by treating me different than they would have say a female staff member in the same situation, or if the roles were reversed and Reubensam would have said I did those things to him that he did to me.

I believe that the unequal treatment stemmed from a discriminatory intent, simply because I was a sex-offender undeserving of his help. I began to believe he was more concerned about the scandal it would create than helping me due to its adverse effects upon his job performance. They instead offered nothing in the way of protection from physical harm, even though he knew of the potential risk of additional harm by Reubensam.

MTC corporate and the regional office offered no help or assistance and ignored my correspondence when I wrote to them. MTC and Winckler are both decision makers, and failed to adequately monitor or observe the actions of their subordinates. Systemic understaffing inhibited this equal protection from harm, a problem that MTC still continues to struggle with today.

Minimal staffing has a direct impact on the ability to provide a safe and secure environment for the residents here in the program; and possibly contributed to the sexual misconduct. The persistence and severity of each of the defendant's knowledge and deliberate indifference as the defendants' were under MTC's control ".

14

b. **Specifically describe how you were harmed by the alleged equal protection violation.**

MTC and Winckler harmed me by allowing the assailant to continue the unwanted touching of a person's private parts and forced oral sex, intended to humiliate the victim or gratify the assailant's sexual desires. Even after the plaintiff sent communication request and a grievance, by Winckler simply moving Reubensam's office at his direction (with what amounts to around the corner to another room with no cameras), after that I held MTC and Winckler just as responsible from that moment because they had knowledge of and he knew of the situation in their official capacity. This behavior was *arbitrary* and *intentionally* *discriminatory*, seemingly not choosing to ever take many of the black residents (of which I am) seriously being a disfavored minority and a sex offender. We all here agreed that if I had been a gay white resident or a female staff member who made these outcries' the response would have been swift and immediate. I would have been treated differently. I will be able to provide the Honorable Court with a variety of examples at trial regarding differences in treatment amongst residents.

I believe he selectively denied me any kind of protective service and quite honestly didn't care much for me because of past disagreements or issues. He harmed me by allowing an unsafe employee and unsafe conditions. Even, if I gave MTC and Winckler a pass for the first incidents taking place, there was absolutely no excuse for not intervening after I reached out to them by communication, grievance, or letter at the end of April. And, again certainly on or about May 11th, 2023.

As much as I know at times myself or others could have been a headache, he intentionally and I dare say spitefully chose not to help me when he very well could have and had the authority and power to do so.

8. **You maintain that MTC failed to supervise or remove Reubensam as an employee, which resulted in a constitutional violation.**

a. **Name the person(s) you hold responsible for failing to supervise or remove Reubensam.**

The individuals I hold responsible for this act are: Management & Training Corporation and James Winckler because he had direct knowledge of the situation and was in charge.

b. **Specifically describe the way(s) in which the individual(s) listed in question 8.a. above failed to supervise Reubensam.**

MTC failed in properly vetting their hired employee, failed in responding to any of my letters, failed to offer any protection in the way of cameras or security monitoring, even after the fact, and failed to have Winckler look into the matter.

Winckler failed to supervise his employees, had no cameras place in the room, then moved Reubensam to another room of the same after the fact. He failed to do or have his subordinates properly do security checks or investigate Reubensam, he even ignored what Reubensam's co-workers rumored to have heard regarding his actions, and he failed to offer any protection to the plaintiff from Reubensam.

c. **Specifically describe the factual basis for your contention that the alleged failure to remove Reubensam amounted to a violation of your constitutional rights.**

Specifically, the factual basis for the violation hinge on the fact that had MTC or Winckler removed, investigated, or suspended Reubensam until they had more clarity on the situation would have stopped the violations of my bodily integrity and injury. At this point MTC allowed Ruebensam to have unfettered access to the residential body and knew or should have known that this substantially heightened the plaintiff's risk of victimization. The drop-off in my progress provides further necessary evidence of a potential link between his group participation, increased and additional medication and the defendants misconduct. The number of times I went to Ms. Lyon's door attempting to speak with her only to end up being sanctioned for doing so, the right to be free from unwanted sexual assault.

d. **Specifically describe how you were harmed by the alleged failure to supervise.**

By the egregious, nonconsensual entry into the body which was an exercise of power without any legitimate governmental objective. The intentional violation of my body. I suffered extreme embarrassment, humiliation, mental anguish, negligence, gross negligence, and no protection, help, or security from danger or harm by MTC due to these violations. Failure to properly staff the facility which culminated in a failure to supervise Reubensam. The detrimental reliance on the defendants to take care of me in an appropriate and professional way.

e. **Specifically describe how you were harmed by the alleged failure to remove Reubensam.**

For a lack of professional supervision, monitoring and protection of the client population, being responsible for the employment of a would be predator who engaged in behaviors detrimental to a patient's psychological, physical, and emotional health. Including intentional infliction of emotional distress, physical pain and vomiting, official oppression and sexual exploitation.

Ruebensam's sexual assaults caused fear, anger, shock, and disgust. This was exacerbated by MTC and Winckler's failure to intervene which caused negligent

infliction of emotional distress and intentional infliction of emotional distress and continued bodily harm.

MTC and Winckler's failure to prevent and detect Ruebensam's wrongful conduct; means that the chief of security acted at minimum with deliberate indifference toward the misconduct; this caused continued harm. Being an agent unfit and the principal (MTC) acted with malice in **continuing** his employment or retaining him even after the fact failed to act or acknowledge any wrongdoing of Ruebensam. I contend that the Company and Winckler was negligent, engaged in negligent hiring, supervision, and training, and negligent retention of its employee.

9. **You contend that MTC failed to follow its policies.**

   a. **Name the person(s) you hold responsible.**

I hold Management & Training Corporation and Winckler responsible, and Ms. Lyon (a TCCO state employee not sued in this complaint).

   b. **You assert that "MTC had no cameras or security equipment in the room defendant Reubensam occupied as his office, where the sexual misconduct took place." Specifically explain how the lack of cameras in Reubensam's office constituted a violation of MTC policy.**

Any area or room where staff and clients inter-act just from a basic security stand point should be monitored for everyone's safety. The fact that there are not blind-spots, but blind rooms was a problem, specifically when there tends to be a shortage of staff on a regular basis which made it difficult to physically monitor or do security checks. However, the policy states that "all of these areas are to be monitored".

The lack of cameras and/or existence of such areas til' this day; continue to be "inadequately" secured or monitored which continues to be a violation of MTC policy. There are still no cameras in those rooms.

This violated **MTC policy #13. Security- b. Center Security- *paragraph 2 –**

The Contractor shall adequately secure the Center **at all times** to include building, keys, chemicals, cleaners and tools. **Contractor shall provide other security equipment to include CCTV cameras**, door alarms and metal detectors as well as any other measures deemed appropriate by the TCCO to maintain control of the SVP Clients in residence at the Center.

The CCTV cameras shall be placed to provide perimeter views of the Center **as well as inside, where necessary to enhance visibility of SVP Client activity. Cameras shall be operable 24 hours per day. Contractor shall provide written policies on how its staff will monitor the CCTV Cameras and maintain the recordings of the CCTV cameras.** Contractor shall provide written policies regarding staff

monitoring of CCTV cameras and maintenance of CCTV camera recordings for TCCO approval.

**c. Are you aware of any other instances where MTC's purported failure to follow its policies resulted in a constitutional violation? Answer "yes" or "no." If your answer is "yes," specifically describe each instance, including date, person(s) involved, the policy MTC did not follow, and the harm that resulted from the alleged failure to follow.**

The plaintiff takes this question in the general sense of totality. I'm uncertain if this question is just pertaining to my complaint or blanketed across the board…like what else have they done? I will keep it simple as it pertains to just my complaint:

MTC failed the plaintiff also in relation to at least **5** policies in place…and a failure to <u>utilize</u> the written policies. They knew of the excessive risks to the plaintiff's but disregarded them and that their unconstitutional (in)-actions in fact caused the continuance of the injuries, and this happened on [at minimum] a policy level, which resulted in actual injuries.

### #29. SVP Clients Rights - b. Abuse, Neglect, and Exploitation

Contractor shall protect SVP Clients from abuse, neglect and exploitation and will establish a zero tolerance standard for the incidence of sexual assault with written policies and procedures regarding the reporting, investigation, and prevention of abuse, neglect, exploitation, and sexual assault. They failed the plaintiff on a policy level in this regard; and inadvertently failed themselves by not following their own written policy in place. This policy is arguably cosmetic. The lack of execution of these policies and unstaffed facility are made by MTC whose edicts or acts may fairly be said to represent official policy.

**Personnel Conduct and Behavior** Policy - Contractor (MTC) shall be responsible for the conduct and behavior of all persons working at the Center (including consultants, independent contractors and their employees and agents and volunteer workers). If a violation occurs, Contractor shall take immediate corrective action acceptable to TCCO. Contractor shall immediately notify TCCO in writing of employees who resign while under investigation for inappropriate conduct related to SVP Client management and for violations of policies related to Center security. At the end of each month, Contractor shall provide TCCO with a listing of all employees terminated during the previous thirty (30) days.

He failed to do or provide this help to the plaintiff and I provided the court with documents to MTC and defendant Winckler, and copies of letters I wrote to a number of different individuals including some law firms. I believe I sent copies of the journal entries I had documenting when a few of these events took place as well. I also have the documents which specifically direct and threaten me with sanction to see mental health or be demoted.

**Criminal Conduct of Employees** Policy- The Contractor Shall immediately notify the TCCO in writing of any employee who has been convicted, arrested, indicted

18

or charged with a criminal offense. Such employee shall not be permitted to return to duty until authorized in writing by TCCO. A copy of such written authorization shall be maintained in the employee's personnel file.

The defendants failed to do or provide this process to the plaintiff in violation, on a policy level, of the written rule that they themselves had in place.

**Serious and/or Unusual Incidents** Policy - Contractor shall report verbally, followed by e-mail notification, serious and/or unusual incidents to the TCCO immediately upon learning of the event. Immediate notification is defined as reporting the incident to TCCO upon becoming aware of the incident. Upon receiving those communication forms and grievance, Winckler had an obligation to provide some form or type of help to the plaintiff, and he did nothing.

**Sexual Assault or Sexual Harassment Reporting** Policy-

Contractor (MTC) shall immediately report any SVP Client report of sexual assault or sexual harassment to TCCO management and appropriate law enforcement authorities.

For whatever reason, he did not afford me the process this policy was created for. It was put in place one would assume, to address these very issues. It was not until I told Dr. Iannucci and had my family to call the Littlefield Police did I receive any help.

Mr. Washington believes MTC and Winckler's behavior violated his right to humane conditions of confinement in the treatment program and his constitutional right to privacy. I also believe that MTC and Winckler's conduct constituted intentional discrimination on the basis of sexual orientation. I also believe that Winckler's unlawful conduct was intentional and malicious or was wantonly committed in reckless or callous disregard of his constitutional rights.

He failed to answer or return any of the plaintiff communication or grievances. The Plaintiff believes MTC and Winckler should have protected him from this abuse. They failed to properly investigate this matter when it was brought to their attention. That's how I feel he (Winckler) violated my due process rights, even after he was aware that Reubensam had previously been the subject of possible sexual misconduct with another resident. He failed to act. A series of workplace sexual assaults, as alleged here, are discrete instances of unlawful conduct that should put MTC (an employer) and Winckler (an employee) on notice to the existence of a cause of action.

10. **In the jurisdictional section of your amended complaint, you reference the Court's supplemental jurisdiction. Are you raising a claim under Texas state law? Answer "yes" or "no," If your response is "yes," answer the following questions:**

Yes. I am raising both Federal (of which I value the most of this complaint) and Texas state law claims.

19

**List the legal basis for your state-law claim(s)—i.e., the specific state statute or constitutional provision.**

In direct violation of the State contracts and policies agreed to between TCCO and MTC, Texas Health and Safety Code Ch. 11 §841 provides that: Detention under the Texas Health and Safety Code CH. 841, is a "rehabilitative" civil remedy - not punitive.

The Defendant(s), Management and Training Corporation (herein - MTC) and former employee Brent Ruebensam (herein - Ruebensam) were contracted with the Texas Civil Commitment Office (herein - TCCO) in Austin, Texas to provide treatment, security, and housing for court ordered patients civilly committed under Texas Health and Safety Code Chapter 841 at The Texas Civil Commitment Center in Littlefield, Texas, and is clearly a health care provider. These defendants are/were operating under the color of law and authority of a state contract. Thus making them actors of the state, and legally responsible to uphold the legislative state statute of Texas Health and Safety Code chapter 841.

In Texas negligence law Texas Government Code, liability "is premised on duty, a breach of which proximately causes injuries, and damages resulting from that breach". "A contract must state its essential terms with 'a reasonable degree of certainty and definiteness,' sufficient to confirm that both parties actually intended to be contractually bound and to enable a court to understand and enforce the parties' obligation and provide an appropriate remedy when breached." As Contractors with the Texas Civil Commitment Office (essentially the state), the defendants are state actors and a legal duty exists.
Under this law, as a general matter, there is no duty to control the conduct of third persons. However, that general rule <u>does not</u> apply when relationship exists between the actor and the third person that imposes a duty on the actor to control the third person's conduct. Such a special relationship traditionally includes those between an <u>employer</u> and <u>employee</u> or between a parent and child.
The Texas Supreme Court clearly states that Texas Commission on Human Rights Act, Tex. Lab. Code Ann. § 21.002 et seq., does not bar a tort claim against the harasser/assailant individually. Neither does the court express any opinion as to whether an employer could be liable, under a theory of vicarious liability or ratification, for the harasser/assailant's assault.

MTC failing to provide adequate medical care, attention, breached their statutory and ministerial responsibilities to supervise as prescribed under Texas law, specifically section 351.041 of the Texas Local Government Code, section 273.2 of the Texas Administrative Code, and sections 511.009(a)(1) - (5), (a) (19) (B), and (d)(1) of the Texas Government Code. Their (defendants) personal involvement and knowledge of the alleged violations give him culpability. His lack of intervention and help after becoming aware of the complaints against Reubensam, resulted in the continued and substantial harm.

Under Texas Law, Tex. Penal Code Ann. § 22.011- Sec. 22.011.  Sexual Assault. (a) A person commits an offense if:

(1) the person intentionally or knowingly: (A) causes the penetration of the anus or sexual organ of another person by any means, without that person's consent; (C) causes the sexual organ of another person, without that person's consent, to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor; or (b) A sexual assault under Subsection (a)(1) is without the consent of the other person if:

(1) the actor compels the other person to submit or participate by the use of physical force, violence, or coercion;

(2) the actor compels the other person to submit or participate by threatening to use force or violence against the other person or to cause harm to the other person, and the other person believes that the actor has the present ability to execute the threat;

**(9) the actor is a mental health services provider or a health care services provider who causes the other person, who is a patient or former patient of the actor, to submit or participate by exploiting the other person's emotional dependency on the actor;**

**(11) the actor is an employee of a facility where the other person is a resident, unless the employee and resident are formally or informally married to each other under Chapter 2, Family Code;**

**Texas State Constitution Article 1 sec. 19 – Due Process:**

The legal basis for these state claims, were that Defendant[s] MTC being the creator and driving force behind their own policies, and Winckler being the

authority of enforcement behind said policies; constituted a clear and imminent danger to my life, safety, and property of my bodily integrity and well-being when under the circumstances, other abatement procedures were reasonably available rather than ignoring, failing to investigate, remove (even if temporarily), and never afforded the plaintiff any kind of due process regarding the complaint. As the plaintiff has <u>never</u> alleged any false information about any previous, allegedly unreliable, allegations of the kind against anyone.

 The plaintiff brings state law tort causes of action for gross negligence (against Defendants MTC, Winckler, and Reubensam), intentional infliction of emotional distress, and abuse of (non) process. Solely against defendants MTC and Winckler, plaintiff brings a 1986 claim against them who neglected to prevent the civil rights violations.

**a.  Name the individual(s) you hold responsible for the alleged state-law violations.**

Defendant(s) MTC, Reubensam, Winckler, and Lyon (TCCO employee).

**b.     Specifically describe the factual bases for your state-law claim(s).**

The factual basis for my state-law-claims are Reubensam's abandonment of the standards of practice norms and policies for that of a licensed treatment provider. The case of a mental health treatment provider's (by contractor) failure to provide a detainee with immediate medical treatment is considered an episodic act or omission. The sexual misconduct violations to my bodily integrity, oral sex, and physical groping causing harm on a number of occasions in the isolation of his office.
The plaintiff contends that under Texas state-law claims contending that the Company MTC was negligent towards the plaintiff, and in negligent retention of its employees.

Including, Texas State law claims against Reubensam for assault by threat of bodily injury based on his threats to intimidate Washington to remain silent about the sexual assaults, sexual assault, false imprisonment for not allowing me to leave his office, and intentional infliction of emotional distress.

Mr. Washington also alleges that the Company is liable for the acts of its employees Reubensam and Winckler based on theories of respondeat superior and agency, and vicarious liability.

Finally, Washington alleges that Defendants are liable for intentional infliction of emotional distress. All such claims were made within the State of Texas' time statute of limitations.

**c. Specifically describe how you were harmed.**

(1) Specifically, they did cause physical harm in the form of sexual assault including coerced oral sex, groping, and sexual intimidation by Reubensam.

(2) The defendants intentionally placed Mr. Washington in 'fear of imminent harmful or offensive contact.

(3) A gross lack of staff did, and continues to, put the plaintiff and those similarly situated in harm's way.

(4) This was exacerbated by MTC and Winckler's failure to intervene which caused negligent infliction of emotional distress and intentional infliction of emotional distress, mental anguish, and continued bodily harm.

(5) Texas' state law claims against the Company of negligence, negligent hiring, negligent supervision, negligent training, and negligent retention.

(6) The injury to the plaintiff was not merely caused by the consummation of acts of sexual misconduct with the defendant. Harm was also caused by the defendant's failure to treat the patient with professionally acceptable procedures.

(7) Malpractice from an action based on seduction.

(8) Failure to protect.

(9) Failure to supervise or remove Reubensam.

(10) The defendant acted intentionally or recklessly;

(11) The defendant's conduct was extreme and outrageous;

(12) The defendant's actions caused the plaintiff emotional distress; and

(13) The resulting emotional distress was severe.

## II.  Declaration

I, WILLIAM E. WASHINGTON, declare under penalty of perjury that the foregoing answers are true

and correct, and I certify that a true and correct copy of my answers to the Questionnaire has been

forwarded to the United States District Clerk, Lubbock

Division, Lubbock, Texas.


May 13th, 2025_____                         _____
Date                                          Mr. WILLIAM E. WASHINGTON

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| WILLIAM E. WASHINGTON,<br>Institutional ID No. 05293051,<br><br>Plaintiff,<br><br><br><br>MANAGEMENT&TRAINING<br>CORPORATION, *et al.*,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | <br><br><br><br><br>No. 5:24-CV-228-BV |

## ORDER TO COMPLETE QUESTIONNAIRE

Pro se Plaintiff William E. Washington has filed a complaint under 42 U.S.C. §

1983, seeking review by the Court of Defendants' alleged wrongful conduct. The district

judge transferred this matter to the undersigned magistrate judge for further proceedings,

including preliminary screening. To properly conduct the preliminary screening required

under 28 U.S.C. § 1915, the Court needs additional information from

Plaintiff concerning the claims asserted.

In accordance with Watson v. Ault, 525 F.2d 886, 892—93 (5th Cir. 1976), the

Court ORDERS Plaintiff to complete the attached Questionnaire and Declaration and

return it to the United States District Clerk, Lubbock Division, 1205 Texas Ave., Rm. 209,

Lubbock, Texas, 79401 within thirty (30) days from the date of this Order. In answering

the Questionnaire, Plaintiff must provide the Court with facts that pertain only to the claims

asserted in this case. Plaintiff may not address the claims of any other person, nor cite any

law or make any legal argument in the answers.

*Plaintiff is warned that failure to timely return the completed Questionnaire and Declaration to the Clerk's Office at the above address may and most probably will result in dismissal of this action.*

**SO ORDERED**.

Dated: March <u>28</u>, 2025.

AMANDA 'AMY' R. BURCH
UNITED STATES MAGISTRATE JUDGE

Mr. William Washington
2600 S. Sunset Ave.
Littlefield, TX.
05293051          79339



MAILED
MAY 14 2025

LUBBOCK TX PB.DF 794
THU 15 MAY 2025 AM

RECEIVED
MAY 19 2025
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

Legal Mail

United States District
Court
Office of the Clerk
Northern District of Texas
1205 Texas Ave, Rm. 209
Lubbock, TX. 79401

